And we'll turn to the last case on our calendar, Mary DeSuze v. Ben Carson et al. I recognize that there are three different parties on one side and they should exercise, they should take their time, the time allotted and we'll try to get through the questions as quickly as we can. And we will operate seriatim, that is we will ask questions as each of the parties has completed his or her argument. Let's proceed. Good afternoon, Your Honor, and may it please the court. My name is Adam Myers and I represent the plaintiff's appellants. This appeal will decide whether the appellants, low and moderate income tenants of a 1,500 unit affordable housing development, may proceed with their challenge of procedurally improper agency actions, which had the effect of doubling their and endangering their ability to remain in the community they call home. While these tenants have tenaciously worked to investigate and challenge the transaction at issue here for more than a decade, the court told them to wait, dismissing their claims largely on statute of limitations grounds. Brace the number of arguments in our briefs, but today, if it pleases the court, I'd like to focus on two. First, that plaintiff's claim under the Administrative Procedures Act should not have been dismissed under the relevant statute of limitations because this action was commenced within six years of the date upon which those claims accrued. And second, that plaintiffs do have standing to assert an APA claim regarding HUD's failure to comply with its own regulations, those codified in 24 CFR section 245.330. First, the district court aired and dismissed plaintiff's APA claims on statute of limitations grounds because it misapprehended the date upon which the plaintiff's claims accrued. Now, a claim under the APA accrues only after two conditions have been met. First, agency action must be final, determining the rights or obligations of the affected parties and concluding the relevant agency decision-making process. But secondly, the claimant must know or have reason to know that the agency action caused them to suffer a legal wrong sufficient to afford them standing under the APA. And on this latter point, there's some nuance. In order to establish standing to challenge an agency's violation under the APA, a plaintiff must, how much they've suffered an injury in fact, they must identify a causal connection injury and the agency act. And finally, they must show that the injury is redressable. And here, because plaintiffs were not on notice regarding this connection between HUD's procedural violations and the harms of the resulting increase, their claims did not actually accrue until at least 2013. In 2007, when the decoupling transaction occurred, the plaintiffs were entirely in the dark about it. In fact, worse than being in the dark, they were misled. In 2007, the property owners notified the tenants that they were seeking a rent increase and they solicited tenant participation regarding a draft application. But simultaneously and unknown to the tenants, they applied to HUD for decoupling and associated rent on a completely different set of financial disclosures. Thereafter, when the tenants received notice in 2008 of the scheduled rent increases, they reasonably assumed that these increases were the result of the application they had participated. But in fact, they were not. In 2011, the plaintiffs obtained a copy of a 2007 letter from HUD to the owners approving of the decoupling transaction. While this arguably put the plaintiffs on notice regarding HUD's role in the application process, it failed to provide sufficient details contents of the owner's application to give plaintiffs reason to know any of the causal connection between HUD's procedural violations and their own harm. Only in 2013, when they obtained in court a copy of a November 2007 financial statement reflecting tens of dollars in improperly considered costs, finally on regarding the APA claim. In our briefing, we cite the Sixth Circuit's United States Forest Service because it clearly explains that an APA claim with respect to a given individual doesn't necessarily accrue all at once upon an administrative act's finality and a party's notice of it. Rather, if there are other facts necessary in articulating the connection between the administrative act, specific harm on the litigant, the claim doesn't accrue until the party knows or should have known of those specific facts. And because the plaintiffs on the improper costs associated with the decoupling application until 2013, the claims they raise in this action under the APA. And the has to assert an APA HUD's failure to comply with its own tenant protection regulations. The district court below held did have standing to assert violation of their statutory tenant protection rights of USC section 1715C-1B. But the court went on to hold the act standing to seek redress for HUD's violation of the implementing regulations codified at 24 CFR section 245.330. And this was an error. The statute provides that when an owner applies to HUD for permission to increase rents, HUD's secretary must ensure that tenants have adequate notice of, reasonable access to relevant information about, and an opportunity to comment upon such application. And that such comments are taken into consideration by the secretary. The statute goes on to direct HUD to promulgate implementations for those statutory provisions. So 24 CFR part 245 contains these implementing regulations. And specifically section 245.330 contains those provisions specifically tailored to apply to developments like Linden Plaza, whose mortgages are not insured by the federal government. The section incorporates other provisions from part 245, specifying what documents must be submitted as part of a rent increase application. And it further provides that the initial application and its supporting documents are to be first to the local agency administering the section 236 benefits. In this case, the New York City Department of Housing Preservation and Development, rather than directly to HUD. The local agency then bears the initial responsibility for approving, denying, or the rent increases in the application. This provision, agencies are those best situated to determine whether the application in question is proper under applicable state laws, including in this case, the Mitchell-Lama law. By effectively cutting HPD out of the process, the owner and HUD increased the likelihood that the resulting increase would be based upon costs, which can't properly be passed along into rents under the state law scheme. The district court's decision denying plaintiff standing under this provision was based largely upon a document, an informal agency guidance document, which applied to decoupling transactions called HUD Notice 2000-8. And this is included page A44 in the appendix. And this notice stated an alternative procedure whereby HUD was, where HUD, with respect to a decoupling application, was supposed to be the first agency to receive that application. But we argue that this agency guidance, issued without notice and common proceedings under the APA, cannot be held to overrule the clear provisions of HUD's own formal regulations. Indeed, the Notice 2000-08 specifically states, decoupling transactions must comply with Part 245's tenant participation requirements. It's a fundamental notion of administering agency by its own regulations. And where those regulators and the agency's interpretation is at odds with the plain meaning, an agency is entitled to no deference. Since we're clearly intended to benefit like the plaintiffs, and had they been followed, the result here might have been different. And for these reasons, the court should also hold the plaintiffs have standing to challenge HUD's violation of these regulatory provisions. And with that, I am happy to address any questions that the court has. Thank you. Judge Park. Thank you. If the harm you allege, the procedural harm, if the harm you allege is procedural harm, then doesn't an APA action start upon the action becoming final? Were we asserting here? In other words, let me try to be clear. I'm sorry to cut you off. My question wasn't as clear as it could have been. You had mentioned the Sixth Circuit U.S. Forest case, and I think there that they had distinguished between harm that was resulting from, in that case, property rights, that was realized later, as opposed to that was distinguished from kind of process harm, which I understand to be the basis of your standing arguments here. And so if it's limited to the process harm, then that I think, under our precedent at least, would accrue from the date the agency action became final, which would have been back in, I guess, 07. And I think that's not precisely the harm that we are not relying simply on a bare procedural harm standing alone. Instead, we've asserted a claim that incorporates into itself the fact that these procedural violations had as their consequence that effectively improper rent costs were incorporated into the rent increase analysis without the opportunity for tenant participation, and that resulted in harms plaintiffs in the form of these wrongful rent increases. And so I think the analysis that you offer, Judge, is similar, I think, to that, that the lower court offered, finding that since it's a procedural harm that we're talking about, the analysis sort of ends there, but that's not the claim that we've raised here. And the claim that we've raised here has as an integral part of it, the effectively fraudulent costs incorporated into this analysis transferred tenants in the form of this harm of these inappropriate rent increases. Okay, thank you. Judge, you might be. Yeah, just to continue on that same thread, under your theory, every time you discovered a new fact now, say in discovery, would you say that you keep accruing a new claim about a new detail about how the application was processed, to which you had no opportunity to meaningfully comment, and therefore you keep basically, every time a new fact comes out that you didn't know about previously, you get a new claim under the APA. Is that really the consequence if we were to adopt your theory? No, I don't think that consequence would follow. I think that certainly once you, there are certain facts that put notice of a claim, and that once you're on notice, then the claim has accrued and sort of further information toward that don't really change it at all. I think the reason why these facts that the tenants learned in 2013 did have the effect of causing effectively a new claim to accrue was because it was first, it was what first put the tenants on notice of this whole possibility, right? Of the fact that there are these wrongfully included costs that were part of this application that they weren't able to see. And so I think additional, I think modest additional facts that occur in the future would have the effect of causing additional claims to accrue. So then following that line, could you explain to me why it was that their discovery in 2011, I think it was, right? Of the fact that there was a decoupling application that was sent to HUD as part of the application. Why that discovery didn't put them on notice of all the, in your view, mischief that could be wrought. By asking HUD to approve a rent increase in conjunction with decoupling. Why is it that you basically had no claim back then, but now you have a claim when you find out about the inclusion of the rent costs? Or perhaps tell me, are you making a different point? Yes, you had a claim in 2011, but now you have a different claim as of 2013. That latter point is the argument, your honor. There was certainly a procedural claim as of 2011, when the plaintiffs became aware of the process and the fact that this application and the grantation happened behind the scenes without their participation. But then the additional claim accrued when they became on notice of facts, which allowed them to distinguish the substantive analysis of the costs that was performed in association with this decoupling from what they had previously thought the analysis looked like. Because as is discussed a bit in the briefs, there was a tenant participation process that did occur in 2007. It just happened on a different application and on different alleged costs. And so it was only in 2013 that the tenants really realized that the tenants had any realizing that were included in the decoupling application differed from those that they had already seen in that prior tenant participation process. So I guess what the thing I'm trying to think through here is that if you can see that they had an APA claim in 2011, linked to the decoupling application sent to HUD, and then you argue that a new and distinct claim arose in 2013, how do we tell the difference between basically factual development of a claim, the same claim, and in the arising of a completely new and distinct claim? I mean, well, let me put it this way. Would you be able to maintain both of those claims independently in the same lawsuit? Or would they merge? You see where I'm trying to go through this. Does that make them the same? I do see where you're trying to go, Your Honor. And certainly they should not, they share a lot of the facts that would be important in developing each of them. And so I don't know quite what it would mean for them to merge. I think they each capture different of harm. Can they recover damages separately for each one, for both? I would think that they could. And I have a pretty clear articulation of what the damages look like under our theory, namely the recovery or the injunctive modification of the rents that they're paying currently. I can't quite articulate, for Your Honor, what the relief on a bare procedural APA looks like. Perhaps, yeah, I can't. I can't quite think of it. I guess I would have thought that the injunctive relief would be ideally, in your sense, the same for both, which is roll back the rent increase. Either way, under either claim, right? Perhaps, Your Honor. I mean, were we in a situation where we were making that bare procedural claim? And it may be that we were seeking that relief also, but effectively we haven't in this case. And I think this issue is where Hare is really informative, I think, because in that case, the APA administrative action was over and done with for years. And the factual developments, namely this plaintiff's purchase of property, was something sort of entirely confined to that person's experience, and that the court found that that factual development did cause that new claim to accrue. And yeah, it's interesting to consider if you just keep buying pieces of property, can you accrue additional claims day by day by day? And I'm not quite sure I know the answer to that, but I think that's what Hare suggests. Okay. Thank you very much. Thank you, Your Honor. One moment, please. Okay. May it please the court, the United States is ready to proceed if there are no further questions for appellant. Just a second, please. I'm trying to see, Judge Kovanec is not connected, he probably got disconnected. I was disconnected again, but I'm here. Okay, thank you, Judge. All right. Let's hear from counsel. There's three different lawyers who will argue on the other side. Good afternoon. May it please the court, Edward Newman from the United States Attorney's Office, Eastern District of New York, for the federal defendant and appellees, Ben Carson, as Secretary of HUD. I will note that the three appellees have agreed that HUD will have six minutes for their argument. I'll start by noting that, I believe it was Judge Nardini said, or just asked, and forgive me if it was Judge Park, but the question was, every time you find a new fact concerning the process here, you get a new claim. And that's really precisely the problem with the appellant's argument. The appellants have been on notice as they admit repeatedly, both in their complaint, their amended complaint, and their papers before this court. They've been on notice since April, 2011, that their rents were increased, HUD approved a rent increase, that there was no opportunity for them to give comment on this rent increase, that the rent increase was premised in part on decoupling expenses, and that this rent increase application was not first submitted to New York City HPD. They have admitted this repeatedly in their papers that they were aware of this since April, 2011. And in an effort to avoid having their claims dismissed by the court on statute of limitations issues, they have attempted to dig up new facts from the procedure that would allow them to hang their head on what's ostensibly a new claim and a new date of accrual, in this instance, 2013. But they can't be permitted to do this, because this would vitiate the very point of a statute of limitations, as Judge Nardini intimated in his question. The April 11th discovery paused this case to accrue. And this was what the district court correctly found and why they correctly dismissed the Appellant's National Housing Act claim using the APA. With the knowledge that they received in April, 2011, the plaintiffs knew or should have known of the injury that was the basis of their action and the complaint in this matter. But they didn't file their claim and the instant case until the six-year statute of limitations had passed. The Appellant's arguments that they could not show harm, causation, redressability, or the continuing adverse effects of the rent increase when they learned of HUD's approval in April, 2011, fails. They needed no further information. And under the cases cited in our brief, Lujan, Scribble, Spokio, and National Resources Defense Counsel matters, when Appellants learned that they hadn't been afforded a purported procedural right to comment on Linden Plaza's application to HUD, they acquired standing to make their APA claim. There was no need to know of or allege any additional harm. Hello? Is there a problem? Judge, this is Maria Rodriguez. I don't see the lawyer on the line right now. I think he probably got disconnected. I'm gonna try to call him right now. I'm gonna try to call him right now. My apologies. May it please the court, it's Edward Newman. My call was dropped from the conference. I will pick up where I was, and again, my apologies to the court. Sure, go ahead. Again, the Appellant's arguments that they couldn't show harm, causation, redressability, or continuing adverse effects of the rent increase despite their notice of HUD's approval in April, 2011, fail under the case law cited in the brief. There's no need to know of or allege any additional harm. And as noted during the questions asked of learned opposing counsel, allowing this to push the claim accrual forward would vitiate the concept of a statute of limitations and allow any party in a similar procedural position to renew, in essence, the accrual of their claim anytime they found some new nugget of information about that process. And that's simply not the way the case law works, and it's not the way the statute of limitations should be treated. The District Court correctly noted that the December, 2011 received gave the Appellants everything they needed to know. And according, there was no need for them to glean any further information, although they did learn additional facts down the line. I'll note finally that equitable tolling, as argued in the briefs, by the Appellant is not narrated. There were simply no extraordinary circumstances to stand in the Appellant's way once they had the December, 2000 letter in their position. And finally, discussing the issue of standing under 24 CFR 245-330. This is, in essence, really a red herring. First, the HUD Housing Notice is the applicable authority to check. It permits an applicant who is seeking rent increases that's premised solely on the company expenses to go directly to HUD for that application. But even if HUD Housing Notice 2008 was somehow deemed effective, it's a red herring because the statute of limitations still stands. And they still would have known no later than April, 2011 that an application had been made directly to HUD rather than HPD, as they erroneously argue was the proper procedure. And they had that information in hand, and yet six years passed without them filing their claim. So even if HUD Housing Notice 2008 was somehow deemed ineffective, that claim would still be barred by the statute of limitations. I will take any questions the Court may have. Thank you. Judge Park? I have no questions, thank you. Judge Nadine? No, thank you. And I have no questions. Next, next lawyer on that side. Good afternoon, Your Honors. May it please the Court. Amy McCampbell for the City of New York and New York City HPD. I'll be addressing the plaintiff's Section 1983 claims against the city. The lower court properly dismissed these claims as time barred. Plaintiff's argument that their time barred claim is saved by the continuing violation doctrine has no merit for at least two reasons. First, plaintiffs are challenging discrete acts to which the continuing violation doctrine doesn't apply. And second, none of those acts occurred within the limitations period. On the first point, plaintiffs are challenging HPD's two approvals of rent increases. These are discrete municipal acts. This Court has clarified that the continuing violation doctrine applies to a death by 1,000 cuts situation where the allegedly unlawful action can't be pinpointed to a particular point in time. Instead, in a continuing violation, a series of separate acts collectively constitutes one unlawful practice. Here, instead, we have two discrete acts, HPD's two approvals of rent increases. This is just like other discrete acts that the circuit has long held do not constitute continuing violations, such as the decision not to promote an employee or not to issue a raise upon promotion. The fact that such discrete acts may have continuing effects on the plaintiff doesn't make them continuing violations. So, for example, an employee can't challenge a failure to promote as a continuing violation, even if it had a continuing effect on the plaintiff's employment. Similarly, here, the fact that plaintiff's rent remains higher than it was before the rent increases doesn't make those approvals a continuing violation. The approvals to increase the rents are still discrete municipal acts. But second, even if the continuing violation doctrine otherwise did apply to plaintiff's claims, their claims would still be untimely because they have failed to identify any municipal acts that occurred within the limitations period. The continuing violations doctrine requires that plaintiffs identify some non-time-barred, allegedly illegal acts that occurred within the statute of limitations. Here, plaintiffs agree that their claim is subject to a three-year statute of limitations, but the most recent municipal approvals that plaintiffs challenged were the rent approvals in 2014, which is over three years before they filed their 2018 complaint. Therefore, they have failed to allege any non-time-barred acts and their claim is untimely. And finally, your honors, although the court reached the point, I'll just note that plaintiffs have also failed to state a claim under Section 1983 against the city. The main authority that they rely upon in their apply brief, the Santiago Monteverde case, that concerns New York State bankruptcy law and has nothing to say about Section 1983 claims. And I welcome the court's questions. Thank you. Judge Park. No questions, thank you. Judge Maguire. No, thank you. I have no questions. We'll turn to the third advocate on this side. Yes, good afternoon. May it please the court. Zoe Phillips from Morgan, Lewis, and Bacchius on behalf of Appellees Linden Plaza Preservation and Linden Plaza Associates. First, as a threshold matter, your honors, the appellants have not challenged the district court's decision to apply its discretion not to exercise supplemental jurisdiction over the state law claims asserted against Linden Plaza after dismissing the federal claims against HUD and the city of New York. The district court properly disposed of those claims against HUD and the city. On those claims, we agree with and echo the arguments made by counsel for the other appellees. First, with respect to the claims against HUD, these claims are time-barred under the six-year statute limitations because plaintiffs were on notice as of at least 2011. That is when they saw HUD's December 2007 letter, which revealed that HUD had approved a rent increase and that they allegedly had not been aware of or been given the right to comment on that rent increase. Plaintiffs argue that this did not serve the cost because the letter did not meaningfully articulate the costs that were factored into the rent calculation. This misconstrued the key point. All plaintiffs needed to know to put them on notice was that HUD allegedly acted without offering them a right to participate. What information HUD may or may not have considered in evaluating the rent increase had no impact on the plaintiff's ability to participate. Here, the alleged harm is that the plaintiffs could not participate, not that rent increases followed. Opposing counsel asserted that these procedural violations were not the claim that they were asserting, rather that it was the improper rent costs that are the claim that they were asserting and it's those rent increases that came from the approval of these rent increases. But that is not so. Here, their claim is a violation of procedural requirements. And thus, the harm was the approval of those rent increases. The remedy would have been to start all over again and give the tenants a right to comment on what should and shouldn't be considered by HUD in determining whether to approve an increase. Plaintiffs are also unable to overcome their fatal statute of limitations problem by arguing that they're entitled to equitable tolling. Plaintiffs argue that the extraordinary circumstance that entitles them to equitable tolling of statute of limitations is that certain information was withheld from them that might have otherwise allowed them to identify and assert their claim. But there are no facts in the record that support that notion and plaintiff cites none. And plaintiffs are also unable to cite any case law that supports their view that the current facts rise to the level of extraordinary circumstances such that equitable tolling is warranted. Excuse me, you have a minute. Finally, with respect to the claim against the city, that claim is also untimely and plaintiffs have also failed to demonstrate that the continuing violation doctrine should apply. Plaintiffs do not and cannot point to any facts that establish that any non-time-barred act took place in furtherance of the alleged policy favoring preservation transactions. Instead, plaintiffs cite co-effects that stem from alleged acts that occurred within the statute of limitations window. Continuing effects do not constitute a continuing violation. Moreover, appellants have not argued how approving rent actually favors or pushes preservation transactions and they do not articulate what role the city has in causing or forcing buildings to remain in the Mitalama program. Finally, even if this court were to find that the district court improperly ruled that the claim had expired, plaintiffs have also failed to properly state a claim. There is no constitutional right to affordable housing and plaintiffs are unable to cite to a case that properly supports that claim. And plaintiffs' argument that section 236 confers a right to lower rent is also misplaced as there is no binding obligation in section 236 to preserve lower rent. The statute's purpose, which is what plaintiffs cite to, is not in and of itself an obligation. And with that, I'll take any questions. Judge Park? No questions, thank you. Judge Nardini? No, thank you. I have no questions. We'll turn to rebuttal argument. How much time does the rebuttal have? Two minutes, Judge. Thank you. Thank you, Your Honor. And I'll be very brief here. We've addressed these arguments raised in our primary and our reply briefs previously as to the argument under the Continuing Violation Doctrine, the substance of our 1983 claim against the city of New York, et cetera. But I do just want to, I guess, conclude with a couple of words about the equitable tolling argument that we did raise. In the event that the court finds that our, that the plaintiff's APA claims in this case were untimely brought under the statute limitations, the court should still reverse the district court on the issue of equitable tolling. The plaintiffs in this case have been really, the word that keeps coming to mind is tenaciously seeking redress for the manner in which they have been wronged now for about 12 years. As soon as these rent increases were imposed upon them and they saw the extent to which they and their neighbors were going to be disastrously affected by these, they began using people in their pro kit to try to address the situation. They began seeking meetings with Reservation and Development, seeking meetings with HUD. They began making FOIL requests to city agencies trying to figure out what the heck happened in 2007 and 2008 that caused the rents to shoot up so dramatically. They commenced a number of previous court proceedings, both in state and federal court, trying to pin and HUD down and their landlords down on what exactly happened here and trying to get relief from anywhere they could find it for these rent increases that they knew were wrong. I've just, you know, working with these clients has been such a pleasure for me because they, they are so persistent and they know and none of the defendants deny that there were procedural wrongs here and that this rent increase was imposed outside of proper process. And so in light of all this, in light of the diligence that the tenants have shown, in light of the fact that HPD and HUD, as we've articulated both in the briefs and in the pleadings, HPD and HUD have at every step of the way worked to deny these tenants access to documents which under Mitchell-Lama and Section 236 regulations, they should have had the right to review, deny them access to these documents and thus presented this extraordinary obstacle with respect to their learn of and then pursue their claims here. And so for that reason, the statute should have been equitably told. Again, resulting in this case having been timely commenced. And with that, I will rely upon my briefs unless the court has any additional questions. Thanks very much. Judge Park, any other questions? No, thank you. And Judge Nardini? No, thank you. Accordingly, we've come to the end of the road today. I ask the clerk to adjourn court. Court sents adjourned.